## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ARIF A. DURRANI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0607 (CKK)** |
| | ) | |
| | ) | |
| **U.S. CITIZENSHIP AND** | ) | |
| **IMMIGRATION SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ. 56, Defendant United States Citizenship and Immigration Services moves for summary judgment in Plaintiff's Freedom of Information Act (FOIA)/Privacy Act case.  In support of its motion, Defendant submits the attached memorandum of points and authorities, statement of material facts not in genuine dispute, exhibits, declaration, and a proposed order.  Plaintiff should take notice that any factual assertions contained in the accompanying declaration and exhibits in support of Defendant's motion may be accepted by the Court as true unless Plaintiff controverts them with his own affidavit or other documentary evidence.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992); LCvR 7.1; and Fed. R. Civ. P. 56(e).

Respectfully submitted,


/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4220
Washington, D.C. 20530
(202) 307-6078


## CERTIFICATE OF SERVICE

     I certify that on August 25, 2008, I caused the foregoing Motion, Memorandum for Summary Judgment, along with the attachments, and Proposed Order to be served on pro se Plaintiff Arif A. Durrani t the following address:

Arif A. Durrani
R 09927-014
Victorville Medium I
Federal Correctional Institution
P.O. Box 530
Adelanto, Cal.  92301


/s/_____
BLANCHE L. BRUCE
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-6078

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ARIF A. DURRANI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0607 (CKK)** |
| | ) | |
| | ) | |
| **U.S. CITIZENSHIP AND** | ) | |
| **IMMIGRATION SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ———————————————— | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN GENIUNE DISPUTE

Pursuant to LCvR 7.1(h), Defendant United States Citizenship and Immigration Services (USCIS) submits this statement of material facts as to which there is no genuine dispute.

1.    On December 14, 1973, Plaintiff, a citizen of Pakistan, entered the United States at New York City, New York (Exhibit E - Order of Show Cause).

2.    On May 13, 1986, Plaintiff filed a Petition For Naturalization (Petition) with U. S. District Court for the Central District of California which stated, among other things, that he was born on 8/14/49 in Pakistan.  The Petition was administered to, and taken by Plaintiff at  the time of filing to affirm the accuracy of the contents of his petition.  The last section of the petition reads:

Wherefore I request that I may be admitted a citizen of the United States, I swear (affirm) that I know the contents of this petition for naturalization subscribed by me, and that the same are true to the best of knowledge and belief, and that this petition is signed by me with my full, true name. So Help Me God.

/s/ Arif Ali Durrani

[Bearing the Court's Seal and the date, May 13, 1986.]

(Exhibit A - Petition of Naturalization).

3.      In May, 1987, Plaintiff was convicted of several felony counts of the Arms Export Control Act, 22 U.S.C. § 2778, and accompanying International Traffic in Arms Regulations, 22 C.F.R. § 120 *et seq*. <u>See</u> <u>U.S. v. Durrani</u>, 659 F. Supp. 1183 (D. Conn. 1987), <u>aff'd</u>, 835 F.2d 427 (2nd Cir. 1987). Plaintiff received an aggregate sentence of 10 years imprisonment and fined $3 million (<u>Id</u>.).

4.      On or about February 10, 1989, INS officials recommended that the United States District Court for the Central District of California deny Plaintiff's Petition because Plaintiff was serving a 10 year sentence for the Exportations of Munitions (Exhibit B - Memo Denial of Petition for Naturalization).

5.      By letter dated August 21, 1989, the INS District Counsel for Seattle, WA, informed Plaintiff that he was ineligible for naturalization because of his criminal convictions and Plaintiff was asked to withdraw his petition (Exhibit C - Letter requesting petition withdrawal.)

6.      On June 26, 1991, the United States District Court Central District of California, confirmed that Plaintiff had not been naturalized by the Court (Exhibit D - Letter from Clerk of the Court).

7.      On September 26, 1991, the INS issued an Order to Show Cause, charging Plaintiff with deportability under subsection 241(a)(4)(A)(i) of the Immigration and Nationality Act (hereafter, "INA"), 8 U.S.C. 241(a)(4)(A)(i), as an alien who had violated the laws of the United States prohibiting the export of certain arms, munitions and

technology (Exhibit E - Order of Show Cause).

8.      On October 15, 1992, an immigration judge found Plaintiff deportable from the United States for violating the export laws of the United States (Exhibit F - October 15, 1992 - transcript of deportation hearing).

9.      On November 13, 1992, a request for Asylum was submitted on behalf of Plaintiff (Exhibit G - Letter Requesting Asylum).

10.      On June 6, 1995, an Immigration Judge ordered Plaintiff deported to Pakistan and denied his applications for asylum and withholding deportation (Exhibit H -December 15, 1997 INS letter).

11.      On December 15, 1997, Plaintiff's Stay of Deportation was denied by INS and Plaintiff was determined to be an aggravated felon based upon his conviction as defined under the Immigration and Nationality Act (Exhibit H - Letter dated December 15, 1997).

12.      Plaintiff testified at his deportation proceeding that he had never taken the oath of citizenship because he had been arrested before the citizenship ceremony (Exhibit I - Decision and Order of Immigration Judge at 4; Exhibit J - Portion of Immigration Hearing  page 41, lines 1-13).

13.      On January 19, 2008, Plaintiff filed a request with the U.S. Citizenship and Immigration Services (hereinafter, "USCIS"), National Records Center (NRC), Lees Summit, MO, seeking the correction of USCIS records maintained in, and retrievable by reference to, the name

Arif Ali Durrani and associated alien registration number A21 763 558 [1]  (Exhibit K - Declaration of Diane Cejka ("Cejka Declaration").

      14.     On March 24, 2008, before the USCIS could complete the review of Plaintiff's alien file ("A-file") Plaintiff  filed the instant civil action with this Court (Docket Entry 1).

      15.     On April 24, 2008, the USCIS provided Plaintiff with copies of the contents of his A-file (1,403 pages were released in full; 138 were released in part; and 157 were withheld in full), notifying him, in effect, that these documents were the known universe of USCIS documents responsive to his request (Exhibit L - USICS April 24, 2008 letter).

      16.     During the production of these records, it was noted that the A- file did not contain a copy of an executed Certificate of Naturalization (Exhibit K - Cejka Declaration ¶ 9).

      17.     On April 30, 2008, Plaintiff again filed a request with the USCIS for a copy of his "citizenship certificate" (Exhibit M - Plaintiff's April 30, 2008 letter ).

      18     By letter dated May 19, 2008, the USCIS advised Plaintiff that his April 30th request was a duplicate of an earlier request to which the USCIS had already responded and, consequently, the USCIS considered the matter closed (Exhibit N - USICH May 19, 2008 letter).

---

[1] The USCIS had successfully identified the relevant alien file previously in connection with the processing of one of Plaintiff's many requests for access to all agency records pertaining to himself.  The alien file, or A-file, is the official record where all Immigration and Nationality Act (INA) transactions (e.g. application for benefits under the INA) involving a particular individual are documented and stored as he/she passes through the U.S. immigration inspection process.  The *Alien File/Central Index System* (A-file/CIS – DHS/CIS 001, 72 *Fed. Reg.* 1755 (Tuesday January 16, 2007)), is a centralized and consolidated electronic Privacy Act protected system of records through which A-files are stored, maintained, updated, tracked and retrieved.  Although the USCIS is the official custodian of all A-files and the system manager for the A-file/CIS, both the files and system are shared with U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and the U.S. Department of State (DOS), all of which create, use and/or contribute to the documentation found in A-files.  All official records generated or held by U.S. immigration authorities pertaining to INA transactions involving Arif Ali Durrani should, as a matter of course, be consolidated in an A-file maintained under, and retrievable by reference to, Mr. Durrani's name, alien registration number, and date of birth or a combination thereof.

15.    By letter dated May 30, 2008, Plaintiff renewed his request for "the copy of [his] certificate" of citizenship, or "the number [assigned to] the certificate," and all associated photographs (Exhibit O - Plaintiff's Letter dated May 30, 2008).

Respectfully submitted,

/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
Assistant United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. Bar # 960245
Assistant United States Attorney
555 4th Street, NW,
Washington, D.C.  20530
(202) 307-6078

Of Counsel:
Eric N. Banks
U.S. Citizenship and Immigration Services

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | |
|---|---|
| ARIF A. DURRANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No.: 1:08-cv-607 |
| | ) |
| | ) |
| U.S. Citizenship and Immigration | ) |
| Services, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, of the Federal Rules of Civil Procedure, Defendant moves for

summary judgment.

**Factual Background**

Defendant adopts its Statement of Material Facts not in Genuine Dispute.

**Argument**

I.    **Legal Standards**

A.    **Summary Judgment**

Freedom of Information Act (FOIA) cases are typically decided on motions for summary

judgment.  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D.

Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on

motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  To

be entitled to summary judgment, the agency must prove that each document was produced, not

withheld, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  A plaintiff in a FOIA case must show that an agency has "1) improperly 2) withheld 3) agency records."  United States v. Dep't of Justice v. Tax Analysts, 492 U.S. 136,142 (1989).  (quoting Kissinger v. Reporters Comm. For Freedom of Press, 445 U.S. 136, 150 (1980)) see 5 U.S. c. § 552(a)(4)(B).

### B.    Search

In response to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  See Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F. Supp.2d 146, 158 (D.D.C. 2004).  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."  Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986). An agency is not required to search every record system, but rather only those systems in which it believes responsive records are likely to be located.  See Oglesby, 920 F.2d at 68.  The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Id., 920 F.2d at 68.  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1987), cert. denied, 445 U.S. 927 (1980).  Once the agency has proffered such evidence, i.e., a legally-sufficient affidavit, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  Miller, 779 F.2d at 1383.

2

**II.     Discussion**

Plaintiff requests that this Court correct the records of Defendant agency to confirm that he is a naturalized citizen of the United States and that he be provided with a copy of his "citizenship certificate" (Docket Entry 1 at 2).   Defendant's motion for summary judgment should be granted because Plaintiff has never been a naturalized citizen of the United States, and therefore, no such certificate exists within Defendant agency.   In order for Plaintiff to become a United States citizen he must take a public oath of allegiance which has not occurred.

Section 1448 of Title 8 of the United States Code states that "[a] person who has applied for naturalization shall, in order to be and before being admitted to citizenship, take in a public ceremony before the Attorney General or a court with jurisdiction … an oath (1) to support the Constitution of the United States . . . . " (emphasis added).   Subsection 337.9(a) of Title 8 of the Code of Federal Regulations states, "[a]n applicant for naturalization shall be deemed a citizen of the United States as of the date on which the applicant takes the prescribed oath of allegiance [i.e., 8 C.F.R. § 337.1(a)], administered either by the Service or an Immigration Judge in an administrative ceremony or in a ceremony conducted by an appropriate court under § 337.8 of this chapter."   8 C.F.R. § 337.9(a).   Subsection 338.1(a) of Title 8 of the C.F.R. states, in relevant part:

> When an applicant for naturalization has taken and subscribed to the oath of allegiance in accordance with §§ 337.1, 337.2, and 337.3 of this chapter, a Certificate of Naturalization, Form N-550, shall be issued by the Service at the conclusion of the oath administration ceremony.

8 C.F.R. § 338.1(a) (emphasis added).   Subsection 338.1(b) of Title 8 of the C.F.R., in pertinent part, states:

The certificate [of naturalization] shall be issued to the applicant … <u>at the time of the</u> <u>administration of the oath of allegiance</u>… .  The Commissioner's signature shall be affixed to the certificate.

8 C.F.R. § 338.1(b).

Here, Plaintiff has publicly acknowledged that he never took the public oath for citizenship. The immigration judge noted in his Decision and Order, "[Plaintiff] further testified that he too was almost naturalized; he completed the naturalization process, but was unable to attend the swearing in ceremony due to his incarceration." (Exhibit I - Decision and Order of Immigration Judge at 4). At another hearing involving his deportation Plaintiff was asked the following questions:

Q.      Did you ever apply for naturalization?

A.      Yes, I did.

Q.      And, what happened to that application?

A.      Everything was completed and the only thing left was that I had to take that final oath in the stadium to complete that.

Q.      And, why - - did you take that oath?

A.      No, I did not.

Q.      Why not?

A.      Because I was arrested at  - - prior to that .

(Exhibit J - Portion of Immigration Hearing at 40-41).

Furthermore, Plaintiff's felony convictions would have precluded him from becoming a naturalized citizen.   Title 8 U.S.C. § 1427(a)(3) [Requirements for Naturalization], in part, states: "[n]o person, …, shall be naturalized, unless such applicant … (3) … has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well

4

disposed to the good order and happiness of the United States… ."  In 1988, section 316.10(b)(2)(ii) defined a lack of good moral character as an applicant who "[c]ommitted two or more offenses for which the applicant was convicted and the aggregate sentence actually imposed was five years or more … ."  Plaintiff was found to lack good moral character, as defined by subsection 316.10(b)(2)(ii), on the basis of his 1988 conviction on arms violations and 10 year prison sentence and, consequently, could not satisfy the requirement for naturalization under 8 U.S.C. 1427(a)(3), receive the Oath of Allegiance to the United States under 8 U.S.C. § 1448(a), and, thus, acquire United States citizenship.  Moreover, on December 15, 1997, an INS District Director determined that Plaintiff's conviction, then, met the definition of "aggravated felony" as defined by 8 U.S.C. 101(a)(43)(C), forming yet another basis to find Plaintiff "an applicant that lacked good moral character" pursuant to 8 CFR 316.10(b)(1)(ii), and rendering him ineligible for citizenship by virtue of 8 U.S.C. 1427(a)(3) (Exhibit H - Letter dated December 1997 ).

Thus, Defendant did not improperly withhold Plaintiff's certificate of citizenship because Plaintiff never achieved United States citizenship.  As a result, records pertaining to Plaintiff's alleged "U.S. citizenship" do not exist.  Additionally, Defendant searched Plaintiff's A-file which consisted of 1,751 pages, and "[d]uring the disclosure processing of [Plaintiff's] file, it was noted that the file did not contain a completed, duly executed Certificate of Naturalization naming Plaintiff as beneficiary" (Exhibit K - Cejka Decl. at  ¶ 9).

An agency is required to produce only those records in its custody and control at the time of the FOIA request McGehee v. CIA, 697 F.2d 1095, 1105 (D.C. Cir. 1983).  The FOIA does not require an agency to create documents that do not exist or to collect disparate data and then generate an agency record. Kissinger v. Reporters Comm. For Freedom of Press, 445 U.S. at 145. Plaintiff

has not met the requirements of United States citizenship and the FOIA certainly does not require

Defendant to create a certificate of citizenship for him.

**III.    Conclusion**

      For the above-stated reason, Defendant's motion for summary judgment should be granted.


                        Respectfully submitted,

                        /s/_____
                        JEFFREY A. TAYLOR, D.C. BAR #498610
                        United States Attorney


                        /s/_____
                        RUDOLPH CONTRERAS, D.C. BAR # 434122
                        Assistant United States Attorney


                        /s/_____
                        BLANCHE L. BRUCE, D.C. BAR # 960245
                        Assistant United States Attorney
                        555 4th Street, NW,
                        Washington, D.C.  20530
                        (202) 307-6078

## CERTIFICATE OF SERVICE

I certify that on August 25, 2008, I caused the foregoing Motion, Memorandum for Summary Judgment, along with the attachments, and Proposed Order to be served on <u>pro se</u> Plaintiff Arif A. Durrani t the following address:

Arif A. Durrani
R 09927-014
Victorville Medium I
Federal Correctional Institution
P.O. Box 530
Adelanto, Cal.  92301

                                                  /s/_____

                                                  BLANCHE L. BRUCE
                                                  Assistant United States Attorney
                                                  Civil Division
                                                  555 4th Street, N.W.
                                                  Washington, D.C. 20530
                                                  (202) 307-6078

7

# EXHIBIT A

2008  11:36      ADOBE AEROSPACE                           001  P.002

U.S. DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SER.

# PETITION FOR NATURALIZATION

## DUPLICATE
(To accompany
Monthly Report on Form N-4)

Petition No. 00636787

A.R. No. ___ ___ ___

To the Honorable JUDGES, DISTRICT  Court for the CENTRAL DIST. OF  LOS ANGELES, CA

*This petition for naturalization, hereby made and filed under section* 316
*Immigration and Nationality Act, respectfully shows:*

(1) My full, true, and correct name is  ARIF ALI DURRANT
*(Full, true name, without abbreviation)*

(2) My present place of residence is  4095 E SKELTON CYN CIRCLE          WESTLAKE VILLAGE
*(Apt. No.)*          *(Number and street)*          *(City or town)*

LOS ANGELES                    CALIFORNIA                    91351
*(County)*                    *(State)*                    *(Zip Code)*

(3) I was born on  8/16/49                    in  PAKISTAN

(4) I request that my name be changed to  NONE

(5) I was lawfully admitted to the United States for permanent residence and have not abandoned such residence.

(6) (If petition filed under Section 316(a).) I have resided continuously in the United States for at least five years and continuously in the State in which this petition is made for at least six months, immediately preceding the date of this petition and after my lawful admission for permanent residence, and I have been physically present in the United States for at least one-half of such five year period.

(7) (If petition filed under Section 319(a).) I have resided continuously in the United States in marital union with my present spouse for at least three years immediately preceding the date of this petition, and after my lawful admission for permanent residence, during all of which period my said spouse has been a United States citizen, and have been physically present in the United States at least one-half of such three-year period. I have resided continuously in the State in which this petition is made at least six months immediately preceding the date of this petition.

(8) (If petition is filed under Section 319 (b).) My present spouse is a citizen of the United States, in the employment of the Government of the United States, or of an American institution of research recognized as such by the Attorney General, or an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or subsidiary thereof, or of a public international organization in which the United States participates by treaty or statute, or is authorized to perform the ministerial or priestly functions of a religious denomination having a bona fide organization within the United States, or is engaged solely as a missionary by a religious denomination or by an interdenominational mission organization having a bona fide organization within the United States, and such spouse is regularly stationed abroad in such employment, I intend in good faith upon naturalization to live abroad with my spouse and to resume my residence within the United States immediately upon termination of such employment abroad.

(9) (If petition is filed under Section 328.) I have served honorably in the Armed Forces of the United States for a period of periods aggregating three years. I have never been separated from the Armed Forces of the United States under other than honorable conditions. If not still in service, my service terminated within six months of the filing of my petition.

(10) (If petition is filed under Section 329.) While an alien or noncitizen national of the United States, I served honorably in an active-duty status in the military, air, or naval forces of the United States during either World War I, 1928, and ending December 31, 1946, or during a period beginning June 25, 1950, and ending July 1, 1955, or ending a period beginning February 28, 1961, and ending October 15, 1978, or I was discharged after five years of service under the Act of June 30, 1950 (P.L. 597, 81st Congress). If separated from such service, I was separated under honorable conditions. At the time of enlistment, reinduction, or induction I was in the United States, the Canal Zone, American Samoa, or Swains Island. If not in any of these places, I was lawfully admitted to the United States for permanent residence subsequent to enlistment or induction. I was never separated from such service on account of alienage. I was not a conscientious objector who performed no military, air, or naval duty whatever or refused to wear the uniform. I have not previously been naturalized on the basis of the same period of service.

(11) I am not and have not been, within the meaning of the Immigration and Nationality Act, for a period of at least 10 years immediately preceding the date of this petition, a member of or affiliated with any organization proscribed by such Act, or any section, subsidiary, branch, affiliate or subdivision thereof, nor have I during such period believed in, advocated, engaged in, or performed any of the acts or activities prohibited by such Act.

(12) I am, and have been during all the periods required by law, a person of good moral character, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States.

(13) It is my intention in good faith to become a citizen of the United States and take without any qualification the oath of renunciation and allegiance prescribed by the Immigration and Nationality Act, and to reside permanently in the United States. I am willing, when required by law, to bear arms on behalf of the United States, to perform noncombatant service in the Armed Forces of the United States, and to perform work of national importance under civilian direction (unless exempted therefrom).

(14) I am able to read, write, and speak the English language (unless exempted therefrom), and I have a knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States.

(15) Wherefore I request that I may be admitted a citizen of the United States of America. I swear (affirm) that I know the contents of this petition for naturalization subscribed by me, and that the same are true to the best of my knowledge and belief, and that this petition is signed by me with my full, true name. So Help Me God.

(16)

*Arif Ali Durrani*
*(Full Name, Without Abbreviation)*

WHEN OATH ADMINISTERED BY CLERK OR DEPUTY CLERK OF COURT

Subscribed and sworn to (affirmed) before me by above-named petitioner in the respective forms of oath shown in said petition and affidavit, and filed by said petitioner, in the office of the clerk of said court at ___

this ___          19 ___

LEONARD ___
___
___          Deputy Clerk.

WHEN OATH ADMINISTERED BY DESIGNATED EXAMINER

Subscribed and sworn to (affirmed) before me by above-named petitioner in the respective forms of oath shown in said petition and affidavit at ___          this ___

day of          MAY 13 1988          19 ___

CLERK U.S. DISTRICT COURT          Designated Examiner

I HEREBY CERTIFY that the foregoing petition for naturalization was by petitioner named herein filed in the office of the clerk of said court at ___          this ___          day of

___          19 ___          Clerk.

I HEREBY DECLARE, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which I have heretofore been a subject or citizen; that I will support and defend the Constitution and the laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same;

that I will bear arms on behalf of the United States when required by the law;

that I will perform noncombatant service in the Armed Forces of the United States when required by the law;

that I will perform work of national importance under civilian direction when required by the law;

and that I take this obligation freely without any mental reservation or purpose of evasion: SO HELP ME GOD. In acknowledgement whereof I have hereunto affixed my signature.

_Anf  Ali  Durrane_
[Signature of Petitioner]

NOTE.—In renunciation of title or order of nobility, add the following to the oath of allegiance before it is signed: "I further renounce the title of (give title or titles) which I have heretofore held," or "I further renounce the order of nobility (give the order of nobility) to which I have heretofore belonged."

Petition granted and _____
Petition denied: List No. _____
Oath of allegiance waived: List No. _____

Reproduced from the holdings of the National Archives and Records Administration
Pacific Region (Laguna)

# EXHIBIT B

## Memorandum

PAGE WITHHELD PURSUANT TO
(b)(5),(b)(7)(c)



| Subject | Denial of Petition for Naturalization of Arif DURRANI, A21 763 558 | Date | February 10, 1989 |

| To | Assistant District Director for Examinations Los Angeles, California | From | Kayleen M. Angelbeck Asst. Officer in Charge Spokane, Washington |

Enclosed are copies of forms N-400, Application to File Petition for Naturalization, N-405, Petition for Naturalization, a criminal indictment and a judgment and probation/commitment order on the above-named subject.

The subject is currently incarcerated in the Spokane jurisdiction serving a 10 year sentence. In May, 1987, he was convicted of Exportation of Munitions.

It is requested that your office recommend to the U. S. District Court in Los Angeles that the subject's Petition for Naturalization be denied.

If further documentation from the subject's "A" file is needed for this denial, please contact Special Agent Patty Horton at FTS 439-2129 or (509) 624-1109.

Once the denial is complete, it is requested that these documents be expeditiously sent to Spokane so deportation proceedings may be initiated on the subject as soon as possible.

Form G-2
(Rev. 1-2-40)

1428

# EXHIBIT C

8/2/85

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION & NATURALIZATION SERVICE
Post Office Box 3324
Seattle, Washington 98114


August 21, 1989


Arif Durrani
#935324/Fed #09027-014
Washington State Penitentiary
Post Office Box 520
Walla Walla, WA 98362

Re:  Naturalization Petition No. 00636787
     A21 763 558

Dear Mr. Durrani:

Reference is made to the naturalization petition which you filed
with the United States District Court for the Central District of
California in Los Angeles on May 13, 1986.

It now appears that you were convicted in 1987 on federal charges
dealing with the unlawful importation into this country of
munitions.  Since that conviction you have been incarcerated in a
penal institution.  Section 101(f)(7) of the Immigration and
Nationality Act, 8 U.S.C. § 1101(f)(7), provides that anyone who
has been confined in a penal institution for more than one
hundred and eighty days during any period for which that person
is seeking a benefit cannot be considered to be of good moral
character.

Good moral character is a requirement of naturalization.  Your
incarceration for more that one hundred and eighty days means
that you are ineligible for naturalization.

I am requesting that you sign the enclosed N-404 Request for
Withdrawal and return it to me for filing with the naturalization
court.  If you do not sign this form, the Service will seek to
have your naturalization petition denied for, among other things,
lack of prosecution.

I must caution you that your pending naturalization petition will
not delay the instituting of deportation proceedings against you
if it is determined that the charges for which you have been
convicted involve moral turpitude.


Doc 0005-1351



EXHIBIT
H

1327

Please give this matter your prompt attention.

Sincerely,


David B. Hopkins
District Counsel

Encls.

# EXHIBIT D

25 '92 15:24                                                    PAGE.002



# United States District Court

## Central District of California
### OFFICE OF THE CLERK

Leonard A. Brosnan
Clerk

June 26, 1991

Assistant United States Attorney
United States Attorney's Office
Deirdre A. O'connor
915 Lafayett Blvd
Room 309
Bridgeport, CT  06604

Dear Deirdre:

    Per your request, attached is a certified copy of
Mr. Arif Ali Durrani's petition filed with the court on
May 13, 1986. As of today, this petitioner has not been
naturalized by this court.

    If you should need any more information, please do
not hesitate to call me at FTS 798-3699.

                                    Sincerely,
                                    LEONARD A. BROSNAN, CLERK


                                    Frank Galvan, Supervisor


GOVERNMENT
EXHIBIT
G

Doc 0005-1168   U.S. COURTHOUSE, RM. G-8 • LOS ANGELES, CALIFORNIA 90012

1164

.

# EXHIBIT E

# UNITED STATES DEPARTMENT OF JUSTICE
### Immigration and Naturalization Service

## ORDER TO SHOW CAUSE and NOTICE OF HEARING

In Deportation Proceedings under Section 242 of the Immigration and Nationality Act

UNITED STATES OF AMERICA:                    File No. __A21 763 558__

In the Matter of        **ARIF ALI DURRANI**                              Respondent.

Federal Detention Center, 177 Weston Street, Hartford, Ct  06120
_____
Address (number, street, city, state, and ZIP code)

UPON inquiry conducted by the Immigration and Naturalization Service, it is alleged that:

1. You are not a citizen or national of the United States;
2. You are a native of _____**Pakistan**_____
   and a citizen of _____**Pakistan**_____
3. You entered the United States at _____**New York, New York**_____ on
   or about __**December 14, 1973**__
                 (date)

SEE CONTINUATION SHEET ATTACHED HERETO AND MADE A PART HEREOF

AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:

SEE CONTINUATION SHEET ATTACHED HERETO AND MADE A PART HEREOF

WHEREFORE, YOU ARE ORDERED to appear for hearing before an Immigration Judge of the Immigration and Naturalization Service of the United States Department of Justice at YOU WILL BE NOTIFIED AT A LATER DATE OF THE TIME AND PLACE OF YOUR HEARING on _____ at _____ m, and show cause why you should not be deported from the United States on the charge(s) set forth above.

Dated:  **September 26, 1991**

                                            (signature and title of issuing officer)
                              **OFFICER IN CHARGE, HARTFORD, CONNECTICUT**
                                            (City and State)

Doc-0005-1140

GOVERNMENT
EXHIBIT
A

136

## NOTICE TO RESPONDENT

## ANY STATEMENT YOU MAKE MAY BE USED AGAINST YOU IN DEPORTATION PROCEEDINGS

### THE COPY OF THIS ORDER SERVED UPON YOU IS EVIDENCE OF YOUR ALIEN REGISTRATION WHILE YOU ARE UNDER DEPORTATION PROCEEDINGS. THE LAW REQUIRES THAT IT BE CARRIED WITH YOU AT ALL TIMES

If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Immigration and Naturalization Service. You should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you should bring the original and certified translation thereof. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Order to Show Cause and that you are deportable on the charges set forth therein. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. Failure to attend the hearing at the time and place designated hereon may result in a determination being made by the Immigration Judge in your absence.

You will be advised by the Immigration Judge, before whom you appear, of any relief from deportation, including the privilege of departing voluntarily, for which you may appear eligible. You will be given a reasonable opportunity to make any such application to the Immigration Judge.

**Failure to attend the hearing at the time and place designated hereon may result in your arrest and detention by the Immigration and Naturalization Service.**

---

## REQUEST FOR PROMPT HEARING

To expedite determination of my case, I request an immediate hearing, and waive any right I may have to more extended notice.

_____
(signature of respondent)

**Before:**

_____
(signature and title of witnessing officer)

_____
(date)

---

## CERTIFICATE OF SERVICE

27 BC

This order and notice were served by me on Sept. 26, 1991 in the following manner:
(date)

~~CERTIFIED MAIL~~
~~RETURN RECEIPT REQUESTED~~

*Personal service by hand on respondent*

*R.C. 9-27-91*

_____
(signature and title of employee or officer)

Special Agent

Doc 0005-1141

1137

Page 2 of 2 Pages

ORDER TO SHOW CAUSE AND NOTICE OF HEARING

In Deportation Proceedings under Section 242 of the
Immigration and Nationality Act

UNITED STATES OF AMERICAN

In the Matter of                     )
                                     )
     ARIF ALI DURRANI                )
                                     )
                                     )
          RESPONDENT                 )          File No.    A21 763 558

CONTINUATION SHEET

ALLEGATION OF FACT CONTINUED FROM PAGE 1 OF 2 PAGES:

You were granted the status of lawful permanent resident on June 16, 1978
at New York, N.Y.:

5. On May 13, 1987 you were convicted in the United States District Court, District
of Connecticut, of knowingly and wilfully exporting and causing to be exported
from the United States of American to Belgium, and elsewhere outside the United
States, articles designated by and on the United States Munitions List (Tile 22
Code of Federal Regulations Part 121.1), that is, Hawk Missle System parts,
without first having obtained the required export licenses from the United States
Department of State, Office of Munitions Control, in violation of Title 22, United
States Code, Section 2778(a) (2) and (c); Title 18, United States Code, Section
2; and Title 22 Code of Federal Regulations, Sections 121.1, 123.1(a) and 127.1.

     AND on the basis of the foregoing allegations, it is charged that you are
subject to deportation pursuant to the following provision(s) of law;

     Section 241(a)(4)(A)(i) of the Immigration and Nationality Act, in that, you
have engaged in any activity to violate or evade any law prohibiting the export from
the United States of goods, technology, or sensitive information.

Doc 0005-1142

1138

EXHIBIT F

U.S. Department of Justice
Executive Office for Immigration Review
Office of the Immigration Judge

Matter of                              File No.:    A 21 763 558

                              )
ARIF ALI DURRANI               )     IN DEPORTATION PROCEEDINGS
                              )
          Respondent           )        Transcript of Hearing


Before R.K. McHUGH, Immigration Judge


Date: October 15, 1992              Place:   Oakdale, Louisiana


Transcribed by DEPOSITION SERVICES, INC. At Rockville, Maryland



Appearances:

        For the Immigration and      For the Respondent:
        Naturalization Service:

        Harold Gossard, Esquire       Lawrence Fabacher, Esquire
                                      Todd Nesom, Esquire



Doc 0005-0251                                    247

mle

1    JUDGE FOR THE RECORD

2            Okay.  We're now on the record on the 15th day of

3    October 1992.  This is in the matter of Arif Ali Durrani.  A

4    number is 21 763 558.  He's present in Court today with his

5    counsel.  His counsel is Mr. Lawrence B. Fabacher, II of 833

6    Barone Street, New Orleans, Louisiana.  Also, Mr. Todd Nesom of

7    Oakdale, Louisiana.  And, the Trial Attorney today is going to be

8    Mr. William Gossard, Trial Attorney with duty in Oakdale,

9    Louisiana.  Okay.  The last time we broke we had admitted

10   Exhibits 1 as the Order to Show Cause.  Exhibit 2 is a judgment

11   and conviction, et al which means all the documents that went

12   there with it.

13   JUDGE TO MR. FABACHER

14           Q.   Is there anything else that either side wants to

15   look at before we proceed?

16   JUDGE FOR THE RECORD

17           Now, I also have received a copy of a memorandum on the

18   issue of deportability filed by Mr. Fabacher and a response file

19   by the Government -- the previous Government attorney, Ms.

20   Lorraine Griffin.  And, those, of course, will be attached to the

21   record also.  Okay.

22   JUDGE TO MR. FABACHER

23           Q.   Anything further by either side?

24           A.   Your Honor, I've just handed to the Court the

25   document which is a recitation of testimony by Congressman Rose

     A 21 763 558                    21              October 15, 1992

Doc 0005-0252                                              248

mle

1    for Congress which involves the respondent and I apologize to the

2    court and to counsel for not having it early but we only got it

3    today.  And, I ask that it be admitted into the record.

4              Q.   Okay.

5    JUDGE TO MR. GOSSARD

6              Q.   Mr. Gossard.

7              A.   Well, Your Honor, the Service would object on at

8    least two grounds.  The first being that I haven't been provided

9    with a copy in advance of the hearing.  The document consists of

10   somewhere in the neighborhood between 20 and 30 pages.  It's

11   impossible for me to digest that document a minute or two before

12   the hearing begins.  I believe -- I'm not sure what the local

13   court rules are but I suspect that there is some requirement that

14   the other side be provided a copy if not some reasonable period

15   in advance of the hearing.  I would also question the relevance

16   of this document in the proceedings today.

17             Q.   Okay.  Well, we don't have local rules here.

18   MR. FABACHER TO JUDGE

19             Q.   May I respond to that, Judge?

20             A.   Yes, go right ahead.

21             Q.   Again, Your Honor, we only received that this

22   morning and secondly, as far as relevance is concerned, the

23   Government is charging that this respondent is a risk to national

24   security.  It's our position among many other things that he is

25   not a risk to national security because the conduct for which he

A 21 763 558                    22                October 15, 1992

Doc 0005-0253

249

mle

1    was convicted was the official policy of the United States

2    Government.  And, I think that that document, if I understand, is

3    relevant to that issue.  I'd also ask the Court to take notice of

4    the media for the last several days with the dogfight between the

5    CIA, the FBI and the Department of Justice regarding the

6    misleading information supplied to the Court presiding over the

7    BNL trial in Atlanta.  So, I think that to the extent that

8    document speaks to this respondent's conduct being part and

9    parcel to official U.S. Government policy, it is relevant.

10          A.    Okay.

11   MR. GOSSARD TO JUDGE

12          Q.    Your Honor, if I might respond to that.  The

13   Service position would be that as tendered, this document is not

14   relevant to the ground of deportability as charged.  We have the

15   conviction record and anything that was going on behind the

16   scenes isn't germane to the decision that the Court's going to

17   have to make on the issue of deportability because we have

18   provided a conviction.  I believe it would be inappropriate for

19   the Court to be going behind that record of conviction.

20          A.    Okay.  What I'm going to do in this particular

21   case, I'm going to mark it as Exhibit 3 for identification and --

22   JUDGE TO MR. FABACHER

23          Q.    Mr. Fabacher, I'm going to let you make copies of

24   it and submit it to the Trial Attorney after the hearing.

25          A.    Yes, sir.

A 21 763 558                    23              October 15, 1992

mle

1          Q.    And, as soon as he's given a copy, then, I'm going

2     to admit that and for whatever relevance, both sides can attack

3     it but those go more to the weight than the question of

4     admissibility.  Okay.  Does anybody have anything further

5     concerning the -- anything before I make my decision on the

6     question of deportability?

7          A.    No, sir.

8          Q.    Okay.

9     JUDGE FOR THE RECORD

10              Basically, as everyone knows, the respondent is charged

11    under Section 241(a)(4)(A)(i) of the Act in that you have been

12    engaged in activity to violate or evade any law prohibiting the

13    export from the United States of goods, technology or sensitive

14    information.  In this particular case, I must admit that I have

15    looked at this case and with a great more curiosity after all the

16    controversy has been raised by both parties and I'm not too sure

17    I see the issue but anyway, as I see it and I believe that the

18    respondent is -- has been convicted and as such, he has been -- I

19    find that he is deportable under Section 241(a)(4) of the Act in

20    that he has engaged in activity to violate any law prohibiting

21    the export from the United States of goods.  Now, there is some

22    that state that technology and sensitive information need to be

23    proven.  I do not think that's the case.  All that needs to be

24    done is that he has shipped goods out of the United States that

25    were on the prohibited list.  The respondent, according to the

A 21 763 558                      24                  October 15, 1992

Doc 0005-0255

251

mle

1   judgement and conviction, did that and as set forth in the
2   appeals, is a great discussion and -- lengthy discussion of the
3   offenses themselves.  But, basically, as I've looked at it, the
4   respondent did not have the proper licensing documents to ship
5   these items that were prohibited and he was convicted of such.
6   And, as such, I find that he was convicted of -- and has -- and
7   deportability has been established and he has evaded the laws of
8   the United States by exporting prohibited goods and now the
9   question also arises, is this a aggravated felony.  In the
10  Court's opinion, it is not an aggravated felony.  There has been
11  no proof that the matters are dangerous items or readily
12  assembled into destructive devices.  Basically, I do not see --
13  the Government has not proven anything more than what is on that
14  Order to Show Cause and I do not see that there's any proof that
15  this is an aggravated felony.  So, whatever that's worth at this
16  particular time.  Okay.  Now, as it's -- I don't find that he's
17  been trafficking in firearms or destructive devices.  There's
18  been no evidence on that point and I don't find security problems
19  involved in this case not with the evidence as it is so far been
20  submitted.  So, I find him merely deportable as charged under
21  Section 241(a)(4)(I) of the Act in that he engaged in activity to
22  violate the laws prohibited the export of goods from the United
23  States that were on the control list and he failed to get the
24  proper documents to make an exception to those as set forth in
25  the judgment and the Court's decision.  Okay.

A 21 763 558                    25                    October 15, 1992

Doc 0005-0256

252

mle

1   JUDGE TO MR. FABACHER

2          Q.   Now, does the respondent wish to designate a

3   country of deportation?

4          A.   Respondent will stand mute, Your Honor.

5          Q.   Okay.  Okay.  Now, do you wish to apply for

6   relief?

7          A.   Yes, sir.

8          Q.   Okay.

9          A.   Respondent wishes to apply for relief under

10  Section 212(c), Section 208 and 243(h) and I'd like to advise the

11  Court that the respondent is the -- excuse me -- that's it,

12  Judge.  That would be it, Judge.

13         Q.   Okay.  Well, with that in mind, the Court would

14  direct Pakistan as the country of deportation.

15  JUDGE FOR THE RECORD

16         We'll now go to tape two.

17                        (OFF THE RECORD)

18                        (ON THE RECORD)

19  JUDGE FOR THE RECORD

20         This is Judge R.K. McHugh on the 15th day of October,

21  1992.  This is in the matter of Mr. Durrani, A 21 763 558.  We're

22  continuing.  He has counsel present and also the Government has

23  counsel present.

24  JUDGE TO MR. GOSSARD

25         Q.   Okay.  The Government, I assume, since it has

A 21 763 558                    26              October 15, 1992

Doc 0005-0257                                        253

mle

1    filed a brief that you do not think that he's eligible for 212(c)

2    relief.

3              A.    Yes, Your Honor.  Based on the reasons cited in my

4    colleagues brief, the Service would move to pretermit Section

5    212(c) relief on the basis of 8 C.F.R. 212.3(f)(3).  It is the

6    Service's position that this individual is excludable under

7    Section 212(3)(A)(i) having been one who has been convicted of

8    illegal exports of sensitive  materials to wit Hawk missile

9    system components, it's the Service's position that a consulate

10   officer or the Attorney General would have a reasonable ground to

11   believe that this individual seeks to enter the United States to

12   engage at very least incidentally in the export of sensitive and

13   prohibited materials.

14             Q.    Okay.  Are you talking about goods?  Again,

15   doesn't that specifically state goods and it's almost a quote of

16   241(a)(4) right?

17             A.    Goods, technology or sensitive information.

18             Q.    Now, again, there's been no proof that these

19   matters are sensitive but I do concur that he has been convicted

20   of exporting goods under 241(a) -- 212(f)(3).  I agree with you

21   that 212(c) is not an appropriate remedy in this case and

22   accordingly, I would pretermit and deny 212(c) relief.  Okay.

23   For that reason because he's statutorily ineligible by regulation

24   which is the force and effect of it.

25   MR. FABACHER TO JUDGE

      A 21 763 558                  27              October 15, 1992

Doc 0005-0258

254

mle

| | | |
|---|---|---|
| 1 | Q. | Your Honor, can I have a point of information? |
| 2 | A. | Yes.  Uh-huh. |

3      Q.    If I understood the Court's remarks earlier, the

4  Court found on the record that this respondent was not a security

5  risk.

6      A.    Right.

7      Q.    I'd also ask the Court to consider the language in

8  the congressional history cited in the brief which says that that

9  section is to be imposed only if the alien is clearly a risk to

10  the national security and the example given in the legislative

11  history is some alien who penetrates a secret computer center at

12  a university.  So, in light of the Court's remarks that it does

13  not think that this alien is a risk to national security and in

14  light of the expressed --

15      A.    I said it hadn't been proven.  I don't -- my

16  particular thoughts are not relevant.

17      Q.    Well, I'm just --

18      A.    Yeah.

19      Q.    Doing my thing, Judge.

20      A.    But, you were saying -- what I said was --

21      Q.    I understand.  I understand.

22      A.    Go right ahead.

23      Q.    But, beyond that, Judge, the legislative history

24  if clear on what Congress means when it says that an alien is a

25  risk to national security.  That the language of Congress speaks

A 21 763 558                    28               October 15, 1992

Doc 0005-0259

255

mle

1   for itself.  And, I'd ask the Court to take that into

2   consideration.

3            A.    Okay.

4   JUDGE TO MR. GOSSARD

5            Q.    The Government.

6            A.    The Service will stand by its prior argument and

7   stand by the brief that was submitted by previous counsel.

8            Q.    Okay.

9   JUDGE TO MR. FABACHER

10           Q.    Basically, Mr. Fabacher, you're asking me to get

11  involved in policy and I can understand your request but I

12  certainly don't think that's my place.  And, Congress' policies

13  are certainly taken -- necessary to be taken into -- their

14  legislative history needs to be reviewed, etcetera.  But, in this

15  particular case, the statute says, as set forth in 212(c) -- I

16  mean in 212 and in 241 seems to indicate that he is excludable as

17  a result of that conviction and regardless of whether Congress

18  meant that it be held for that, if they wanted to pass that into

19  the legislation, they should have done so.  And, you know,

20  certainly it's not for me to tell Congress how to react -- I mean

21  how to act since I'm a preacher of Congress.  But, by the same

22  token, I'm bound by the statute and the statute says any goods,

23  regardless of security items or anything else.  So, I found that

24  he's -- he's -- it says any activity violated law of the United

25  States relating to espionage and sabotage or to violate or evade

A 21 763 558                        29                    October 15, 1992

Doc 0005-0260

256

mle

1    any law prohibiting the export from the United States of goods,

2    technology. And, in my opinion, he meets that portion where it

3    says the Untied States of goods.

4              Q.    I understand, Judge.

5              A.    So, accordingly, I'm going to deny your request

6    for 212(c) relief. Okay.

7    JUDGE TO MR. GOSSARD

8              Q.    Now, does the Government have any objection to 208

9    and 243(h)?

10             A.    Your Honor, it has outlined in the brief which has

11   been submitted in this matter. The Service position is that this

12   gentleman's conviction was for an aggravated felony in that he

13   was exporting explosive devices and that he is, in fact, a

14   security risk and is not eligible to seek 208 or 243(h).

15             Q.    Okay. Well, that could very well be true but from

16   the evidence that's in front of the Court, I don't see that.

17   JUDGE TO MR. FABACHER

18             Q.    So, accordingly, I will allow you to file 208 and

19   243(h). Approximately how much time do you need to file those

20   documents?

21             A.    Sixty days.

22             Q.    Okay. Any reason why it will take so long?

23             A.    No, sir. Thirty days.

24             Q.    Okay. Today is the 15th day of October. That

25   will take us until the 16th day of November.

A 21 763 558                    30                    October 15, 1992

Doc 0005-0261

257

mle

1          A.   May I raise a point of information, Judge?

2          Q.   Yes, sir.

3          A.   The reason I said 60 days was as the Court knows

4     from the record, this respondent is the father of three U.S.

5     citizen children none of whom are of the age to be able to file a

6     petition for him.  However, I'm advised by the respondent that

7     now that he's trying to get his life back together.  He is going

8     to marry a U.S. citizen shortly and in that case, of course, we

9     would then file an I-130 which would raise the issue of Matter of

10    Garcia and when the hearing would be held and also raise the

11    issue of the applicability of Section 212(h).  I only tell the

12    Court that for its information.

13         Q.   Okay.

14         A.   He is not married as we speak, Judge.

15         Q.   Okay.  So.  Okay.  Well, I guess we'll address

16    that when it arises.

17         A.   Enough said.

18         Q.   Okay.  Anything further by either side?

19         A.   Your Honor, for the purposes of the record -- I'm

20    sorry.  I'm speaking out of line.

21         Q.   Go ahead.

22         A.   No, I'm sorry.  Strike that.

23    MR. GOSSARD TO JUDGE

24         Q.   Nothing further from the Government.

25    MR. FABACHER TO JUDGE

A 21 763 558                    31              October 15, 1992

Doc 0005-0262

258

mle

```
1              Q.    Nothing further from this side, Judge.
2              A.    Okay.  At one time you mentioned change of venue
3        and I guess if, in fact, you do decide to change venue, you need
4        to submit those documents in writing and, of course, the
5        Government can also oppose, you know -- also oppose or join in
6        writing.
7              Q.    I understand.
8              A.    Okay.  Let me see.
9                          (OFF THE RECORD)
10                         (ON THE RECORD)
11       JUDGE FOR THE RECORD
12             We'll set the asylum hearing for the 12th day of
13       January 1993 at 8:30 in the morning.  Unless there's anything
14       further, Court will be adjourned till then.
15                         HEARING CONTINUED
16
17
18
19
20
21
22
23
24
25
```

       A 21 763 558                    32                 October 15, 1992

Doc 0005-0263

EXHIBIT G

# GILL & FABACHER
## ATTORNEYS AT LAW
833 BARONNE STREET
NEW ORLEANS, LOUISIANA 70113
(504) 522-2800
FAX (504) 522-8405
TELEX 056439

CLAVE E. GILL
LAWRENCE B. FABACHER II
PATRICIA A. BOLLMAN

OF COUNSEL
WILLIAM M. DARLINGTON

November 19, 1992

7139 NORTH NINTH AVENUE
SUITE 203
PENSACOLA, FLORIDA 32504
(904) 484-2855
FAX (904) 478-0395

### FEDERAL EXPRESS

Executive Office for Immigration
    Review
Filing Department
Office of Immigration Judge
5060 East Whatley Road
Oakdale, LA  71463

Re: Arif Ali DURRANI, File # ( A21 763 588)
    Form I-589, Request for Asylum in the United States
    Motion to Extend Time for Filing

Dear Sir/Madam:

Please find the enclosed Asylum application and other supporting materials pertaining to the above referenced applicant. Additionally, please be advised that a Motion to Extend the Time for Filing is also enclosed.

As you will note in the table of contents, the file will be supplemented with additional substantiating documents.

If additional information is required regarding any of the above, please do not hesitate to contact me personally at the telephone number indicated above. Your kindness in allowing us to extent the time for filing is greatly appreciated.

Very truly yours,

GILL & FABACHER

Iris L. Griffin
Paralegal

ilg/

Enclosure

cc: Durrani, A
    EOIR-1 ORIG-2 COPIES

Doc 0005-1408

1381

# EXHIBIT H



**U.S DEPARTMENT OF JUSTICE**

Immigration and Naturalization Service

December 15, 1997

107 East 5th Avenue
Oakdale, La. 71463

Lawrence B. Fabacher
Attorney at Law
One Canal Place
365 Canal Street, Suite 2340
New Orleans, La.  70130

Re: DURRANI, Arif Ali
    A21 763 558

Dear Sir,

Reference is made to your application dated November 24, 1997, for a Stay of Deportation on behalf of Mr. Arif Durrani.

A careful review of Mr. Durrani's file indicates that he entered the United States at New York, NY on December 14, 1973 as a visitor.  On June 16, 1978 his status was adjusted to that of a legal permanent resident.

Mr. Durrani was convicted in United States District Court, District of Connecticut, for knowingly and willingly exporting from the United States Articles on the U.S. Munitions Lists without required export licenses and engaged in the business of exporting defense articles on U.S. Munitions Lists, in Violation of Title 22, USC, 2778(a)(2) & (C), 18 USC 2, 22 CFR 121.1, 123.1(a), & 127.1 and Title 22 USC 2278(b)(1) & (C), 22 CFR 122.1(a).  He was ordered to serve 10 years and was imposed a fine of two (2) million dollars.

Mr. Durrani was found deportable and an order was issued on June 6, 1995.  The Immigration Judge ordered Mr. Durrani deported to Pakistan and his applications for asylum and withholding of deportation were denied.  Mr. Durrani filed an appeal with the Board of Immigration Appeals and that Appeal was dismissed on June 26, 1995.  A Petition for Review (#95-60461) was filed with the 5th Circuit, and it was dismissed on April 12, 1996.  A Motion to Reopen was filed with the Board of Appeals and the motion was dismissed on February 10, 1997.  A Petition for Review (#97-60078) was filed based on the Board of Immigration Appeals dismissal of the Motion to Reopen.  It was dismissed on October 23, 1997.

In the Application for Stay of Deportation, you indicate Mr. Durrani has an I-130 petition pending.  Even if approved, the petition is merely a preliminary step in applying for lawful permanent resident status and does not give Mr. Durrani any right to remain in the United States.

Doc 0005-1110

1106

Lawrence B. Fabacher                                                    Page 2

RE: DURRANI, Arif Ali
    A21 763 558


In accordance with Title 8 CFR 241.31, the Order of Deportation against Mr. Durrani is final. Although Mr. Durrani was not found deportable as an aggravated felon, his conviction now meets the definition of an aggravated felon as defined in 101(43)(c) of the Immigration and Nationality Act, enacted April 1, 1997.

Based on the facts in this case, your request that Mr. Durrani be granted a Stay of Deportation is denied.

Sincerely,


*John B.Z. Caplinger*
John B.Z. Caplinger
District Director

# EXHIBIT I

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
OAKDALE, LOUISIANA

FILE NO.:A21-763-558

|  |  |
|---|---|
| IN THE MATTER OF: | ) |
| ARIF ALI DURRANI | ) IN DEPORTATION PROCEEDINGS |
| RESPONDENT | ) |

CHARGE:         § 241(a)(4)(A)(i) of the Immigration and Nationality
                Act of 1990 — Engagement in activity in violation of
                law prohibiting the export from the United States of
                goods, technology, or sensitive information.

APPLICATIONS:   §208 of the Act — Political Asylum;
                §243(h) of the Act —Withholding of Deportation.

ON BEHALF OF THE RESPONDENT:        ON BEHALF OF THE SERVICE:

Lawrence B. Tabacher, Esq.          Lorraine Griffin, Esq.
833 Baronne Street                  P.O. Box 5095
New Orleans, LA  70113              Oakdale, LA  71463

Todd Nesom, Esq.
109 S. 11th Street
Oakdale, LA  71463

## DECISION AND ORDER OF THE IMMIGRATION JUDGE
### I. Procedural History

The respondent is a 44-year-old divorced male, native and
citizen of Pakistan who entered the United States on December 14, 1973 at
New York, New York as a nonimmigrant on a business visa.  On June 16,
1978, the respondent became a lawful permanent resident of the United
States, by virtue of his marriage to a citizen of the United States.  On
May 13, 1988, the respondent was convicted of the offense of exporting
Hawk missile system parts to Iran, without the required export license in
violation of 22 U.S.C. § 2778(a)(2) and (c), 18 U.S.C. §2, and 22 C.F.R.
§§121.1, 123.1(a), 127.1. 1/  The respondent was sentenced to ten years

---

1/ Respondent's conviction was affirmed by the Second Circuit Court of
Appeals in 1987. U.S. v. Durrani, 835 F.2d 427 (2d Cir. 1987).

1

Doc 0005-1174

in prison and was assessed a three million dollar fine. On September 26, 1991, the Immigration and Naturalization Service (hereafter "Service") issued the Order to Show Cause against the respondent, charging him with deportability under §241(a)(4)(A)(i) of the Act, as an alien who has violated the laws of the United States prohibiting the export from the United States of goods, technology, or sensitive information. [Exh. 1]. Prior to his asylum hearing the respondent was released from the custody of the Service on bond and is now residing in California.

At a deportation hearing conducted in Oakdale, Louisiana on October 15, 1992, the immigration judge found the respondent to be deportable as charged and that his deportability had been established by evidence which was "clear, convincing, and unequivocal." Woodby v. INS, 385 U.S. 276 (1966). The respondent declined to designate a country to which his deportation should be directed, if required by law. The immigration judge advised the respondent that his deportation, if required, would be directed to Pakistan, the country of which he is a native and citizen. The respondent, through counsel, informed the immigration judge that he would be applying for relief from deportation in the form of asylum under §208 of the Act and for a waiver of inadmissibility under §212(c) of the Act. Subsequently, the immigration judge found the respondent to be statutorily ineligible for relief under §212(c) of the Act and pretermitted his application for such a waiver. In a deportation proceeding, a §212(c) waiver waives only those charges of deportation under § 241(a) of the Act for which there exists an analogous ground of exclusion. See Matter of Hernandez-Casillas, Int. Dec. 3147 (BIA 1990); A.G. 1991); Matter of Granados, 16 I&N Dec. 726 (BIA 1979). In the instant case, the respondent was found to be

2

1171

deportable under §241(a)(4)(A)(i) of the Act. The comparable ground of exclusion for this ground of deportability, §212(a)(3)(A)(i) of the Act 2/, is a ground of excludability which cannot be waived under §212(c) of the Act. See 8 C.F.R. 212.3(f)(3)(1994). At an earlier proceeding, the immigration judge also found that the respondent poses no danger to the national security of the United States. See §243(h)(2)(D) of the Act; 8 C.F.R. §208.16(c)(2)(iv)(1994).

On February 4, 1992, the respondent filed his application for asylum on the Form I-589. In it he claims persecution on account of his business activities as well as his abandonment of the Muslim religion. [Exh. 4]. Pursuant to regulation, the office of the Immigration Judge sent the applicant's asylum application to the Bureau of Human Rights and Humanitarian Affairs ("BHRHA") at the State Department for an advisory opinion. See 8.C.F.R. 236.3. On January 22, 1993, the BHRHA issued a reply which is included in the Record of Proceedings [Exh. 5]. Since the Fifth Circuit Court of Appeals views the State Department as "the most appropriate and perhaps the best resource [from which] to obtain information on political situations in foreign nations", its opinion will be given substantial weight. Rojas v. INS, 937 F.2d 186, 190 at n. 10 (5th Cir. 1991). However, an advisory opinion is not dispositive, but rather it is to be considered in light of the evidence presented and the asylum applicant must be granted the opportunity to rebut it. This

2/ §212(a)(3)(A)(i) provides that an alien is excludable from the United States if he has engaged in an activity which is a "violat[ion] or eva[sion] [of] any law prohibiting the export from the United States of goods, technology, or sensitive information . . ."

3

application is also considered a request for withholding of deportation under §243(h)(1) of the Act. A hearing on the merits of the respondent's asylum application was conducted in Oakdale, Louisiana on September 29, 1993. At the conclusion of the hearing, the immigration judge reserved his decision.

## II. Testimony

In support of his asylum claim the respondent presented his own testimony as well as one witness, Gene Wheaton. The government presented the testimony of one witness, Deirdre A. Martini, an assistant United States Attorney in the district of Connecticut. The respondent's asylum application, documentation in support thereof, and the in court testimony establish the following facts.

The respondent was the first witness to testify. He testified that he has been living in the United States since 1973. In 1977, he married a United States Citizen with whom he had three children, all of whom are citizens of the United States. He stated that he pays child support every month. The respondent testified that his two brothers live in the United States and are naturalized citizens. He further testified that he too was almost naturalized; he completed the naturalization process, but was unable to attend the swearing in ceremony due to his incarceration. The respondent testified that both of his parents are deceased. His father, Basharad Ali Durrani, a general in the Pakistan army, was killed in a bomb attack of a government building in Pakistan in 1970. The respondent testified that his three sisters are living in Pakistan.

The respondent testified that prior to his criminal conviction for exporting hawk missile parts to Iran without a license from the State

9

Doc 0005-1177

1173

Department, he was self-employed as a businessman. In early 1982, he formed his own corporation, Merex Incorporated, through which he represented manufacturers of aircraft parts in sales to foreign governments. The government of Israel was his client. The respondent testified that between 1974 and 1976 he negotiated contracts in which he furnished the government of Israel with aircraft parts and components.

In 1988 the respondent was convicted for the selling of Hawk missile parts to the government of Iran. He told the court that this is his only criminal conviction and that during his incarceration he was a model prisoner. Since his release from prison he has complied with the terms of probation. In fact, his probation officer in California opines that he will complete his term of parole without any problems. [Exh. 8].

It is the respondent's opinion that if he went back to Pakistan he would be harmed by the government because of his past business dealings with the Israeli government. He testified that in Pakistan, it is a well-known fact that the names of Pakistanis who have done business with the state of Israel are placed upon a government black list. He also told the court that in the past his mother cautioned him against returning home because his past business ties would cause him harm.

The respondent further testified that he used the Bank of Credit and Commerce International ("BCCI") to underwrite his aircraft part shipments to other countries and that his business relationship with the bank afforded him a bird's eye view into the inner-workings of the bank. He testified that because he is perceived by others to be an insider of BCCI, he has been approached by various Congressional committees, conducting a criminal investigation of the bank, to disclose this

5

Doc 0005-1178

1174

knowledge. He stated that he was interviewed by Congressional staffers during his incarceration in federal prison and in the Los Angeles area during the spring of 1993. He testified that during these interviews he revealed information to officials about the funding of programs related to the sale of arms and the ownership of the bank, all of which was prejudicial to BCCI and its officials. The respondent further testified that the bank's owner and president, Agha Hassan Abedhi is aware that he has furnished Congress with information and that he and other BCCI officials are upset with him. According to the respondent, Abedhi now resides in Pakistan where he is a man of great power. The respondent believes that Abedhi and others associated with BCCI would seek retribution against him for providing Congress with information that was adverse to them and the bank. He stated that if he returns to Pakistan, the officials of BCCI would kill him.

The respondent further testified that he fears returning to Pakistan because although he was born a Muslim, he no longer practices the Muslim religion. He believes that his status as a lapsed Muslim places him in great physical danger since muslims living in Pakistan view non-practicing Muslims as infidels. The respondent feels that he would be identifiable to others as a lapsed Muslim because he was once married to a Christian woman and he raised his children as Christians.

Also testifying on behalf of the respondent was Mr. Gene Wheaton, a citizen of the United States who was appointed in 1991 by the federal court in Bridgeport, Connecticut to be the respondent's investigator during the appeal phase of his criminal trial. Before working as investigator in the respondent's criminal case, Mr. Wheaton worked as a criminal investigator in the army for many years. His

Doc 0005-1179                                                              1175

specialization was security and intelligence affairs in the Middle East. Since 1975 he has worked as an independent consultant on international matters involving security and intelligence for the governments of Iran, Saudi Arabia, Egypt and Pakistan. He also testified that government officials in Washington D.C. consider him to be an expert on security matters in the Persian Gulf, as a result of his role as the director of security and intelligence for the Rockwell Corporation on the IBEX program in Iran, an electronic intelligence program. Mr. Wheaton further testified that like the respondent, he too has appeared before Congressional officials and investigators to apprise them of the conditions in the Persian Gulf and other countries in the Middle East.

Mr. Wheaton testified that the government of Pakistan hired him to survey its military airbases in conjunction with a program to provide them with F-16 fighter jets. He testified that he has made approximately six trips to Pakistan, each trip lasting an average of between two and three weeks. He stated that his last trip to Pakistan was in 1984. He further added that in 1986 he did consulting work for the government of Pakistan relating to the supply of weapons to the Afghan freedom fighters, but that his work did not require him to go to Pakistan.

Mr. Wheaton testified that during the course of his investigation, Israeli intelligence officials confirmed that the respondent had a business relationship with the state of Israel involving the sale of high tech military spare parts. Mr. Wheaton also confirmed that the respondent was privy to the affairs of BCCI. He believes that high ranking government officials are very unhappy about the large financial losses which they have incurred as the result of the United

-7-

Doc 0005-1180

1176

States government's investigation of BCCI and its subsequent closure. Mr. Wheaton testified that he believes that the government has labeled the respondent as a subversive for giving the U.S. government information about BCCI and if he went back to Pakistan his name would be placed upon a black list and he would possibly suffer physical harm.

The Service presented one witness, Deirdre A. Martini, an assistant United States attorney in the District of Connecticut, to testify regarding allegations that the respondent had committed criminal acts while incarcerated. Ms. Martini stated that she represented the United States government in post conviction proceedings relating to the respondent's criminal case. She testified that during these proceedings the respondent allegedly altered a National Intelligence Council memorandum and submitted it to the court as evidence in support of his claim that Lieutenant Colonel Oliver North had instructed him to export Hawk missile parts to Iran. Ms. Martini testified that as a result of the respondent's submission of documents which were allegedly fraudulent and his making false statements, under oath, before the United States Parole Commission, in connection to these documents, the Commission postponed the respondent's release date. On cross-examination, Ms. Martini admitted that no criminal charges were ever lodged against the respondent for his alleged criminal conduct.

Ms. Martini also testified that the respondent has not satisfied his criminal debt of three million dollars. The court notes that interest is accumulating on the unpaid balance of the respondent's fine. In 1989, the government sold the respondent's home in a foreclosure action and approximately five hundred thousand dollars was applied

8

1177

towards his fine. Thus far the only additional money the respondent has

made in satisfaction of his debt are cash payments totalling

approximately two hundred dollars. Mrs. Martini further stated that as

of June 25, 1993, the respondent owed the government more than three

million dollars. See [Exh. 10].

## III. Applicable Law

### A. Asylum

In order to establish a valid asylum claim, an applicant must

show that he is a "refugee" within he meaning of the Act. § 208 of the

Act. §101(a)(42) of the Act defines refugee as:

> Any person who is outside any country of such person's
> nationality or, in the case of a person having no such
> nationality, is outside any country in which such person
> habitually resided, and who is unable or unwilling to return to,
> and is unable or unwilling to avail himself or herself of the
> protection of, that country because of persecution or a
> well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group,
> or political opinion . . . The term refugee does not include any
> person who ordered, incited, assisted, or otherwise participated
> in the persecution of any person on account of race, religion,
> nationality, membership in a particular social group or
> political opinion.

Asylum is a discretionary form of relief. Hence, an alien with a valid

asylum claim is not necessarily guaranteed relief. An applicant for

asylum must also convince the immigration judge that his asylum

application merits a favorable exercise of discretion. Matter of

Mogharrabi, 19 I & N Dec. 439, 447 (BIA 1987). The Board of Immigration

Appeals (hereafter "BIA") uses a totality of the circumstances test to

determine whether or not an alien who has established that he is a

refugee warrants a favorable exercise of discretion. Matter of Pula, 19

9

I&N Dec. 467 (BIA 1987).

An alien's fear of persecution is "well-founded" if a reasonable person in his situation would fear persecution. Matter of Mogaharrabi, supra at p. 446. To establish a well-founded fear of persecution, an applicant for asylum must show that: (1) the alien possesses a belief or characteristic which a persecutor seeks to overcome by means of punishment of some sort; (2) the persecutor is already aware, or could become aware, that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and (4) the persecutor has the inclination to punish the alien. Id. at p. 447.

The test for asylum relief has both a subjective and an objective component. Adebisi v. INS, 952 F.2d 910 (5th Cir. 1992); Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir. 1988). The objective component is met when the alien establishes that there is a reasonable possibility of such persecution. INS v. Cardoza-Fonseca, 480 U.S. 421 (1987). The subjective component is met when the fear is genuine. Hernandez-Ortiz v. INS, 777 F.2d 509, 513 (9th Cir. 1985).

B. Withholding of Deportation

To be statutorily eligible for withholding of deportation, the alien must meet a more stringent standard than that for asylum. He must demonstrate that his "life or freedom would be threatened in such a country on account of race, religion, nationality, membership in a particular social group, or political opinion. INS v. Stevic, 467 U.S. 407, 413 (1984). The Supreme Court has defined "clear probability" to mean that persecution of the alien is "more likely than not" to occur. Id. at p. 407. Testimony can be sufficient to meet the alien's burden,

10

but only if it is credible in light of the general conditions of the country from which the alien is fleeing. Withholding of deportation is not a discretionary form of relief. Hence, unlike political asylum, withholding of deportation may not be denied in the exercise of discretion to an alien who establishes statutory eligibility for such relief.

## IV. Analysis

As a preliminary matter the court will address the Service's argument that the respondent is statutorily ineligible for asylum because the exportation of hawk missile parts without a license is a "particularly serious crime" within the meaning of the Act. At an earlier deportation hearing the immigration judge found that the respondent's criminal conviction was not an aggravated felony and that he was not a threat to the national security of the United States. Although the Act does not contain a definition for particularly serious crime, in Matter of Frentescu, 18 I&N Dec. 244 (BIA 1982), the BIA set forth a list of guidelines to consider in determining whether a crime is particularly serious: the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and whether the type and circumstances of the crime suggest that the alien will be a threat to the community. The Service has failed to offer any authority showing that exporting hawk missile parts without a license is a particularly serious crime and the court is unaware that any such authority exists. Since the respondent's crime was not directed against a person, the court finds that the nature of his offense and its underlying circumstances do not constitute a particularly serious crime. However,

11

the court does find his criminal conviction to be a serious adverse factor which will be considered in the exercise of discretion.

Now turning to whether the respondent has established a valid asylum claim, he makes three arguments relating to his fear of persecution. The respondent claims that he will be persecuted by the government on account of his political opinion. He contends that the government of Pakistan has imputed an anti-Pakistani political opinion to him on account of his past business relationship with the government of Israel. He also claims that he would be harmed by other Muslims in Pakistan for abandoning the Muslim religion. He also asserts that officials of BCCI would harm him on account of his giving the United States Congress incriminating information about them.

The court entertains sincere doubts about the respondent's credibility. For example, during his testimony, the respondent claimed that he had completed the naturalization process, but for the technicality of attending the naturalization ceremony. However, evidence contained in the record of proceedings reflects that the respondent never completed the naturalization process. In 1966, he filed an application to File Petition for Naturalization. Such petition was never approved and in a letter dated August 21, 1989, the District Counsel for Seattle, Washington informed the respondent that he was ineligible for naturalization due to his criminal conviction and asked him to withdraw his citizenship petition. See (Exh. 10, Part H).

Although the court finds the testimony of Mr. Wheaton to be substantially credible, the weight of his testimony is diminished by the fact that his last trip to Pakistan occurred more than ten years ago. Further, Mr. Wheaton's conclusion that the United States government

12

Doc 0005-1185

withheld information in the respondent's trial and that perjured testimony was used to convict the respondent cannot be given any weight in these proceedings since his conclusions go to the issue of the respondent's guilt or innocence. To give his statements any consideration would constitute going behind the record of conviction, an act which is prohibited in immigration proceedings. Matter of Roberts, Int. Dec. 3148 (BIA 1991). Furthermore, although Mr. Wheaton's testimony was interesting, much of the testimony was neither relevant nor germane.

The respondent claims that his status as a lapsed or non-practicing Muslim means that he will be harmed by other Muslims living in Pakistan. However, the respondent has submitted no evidence establishing his claim. The respondent's claim that he would be persecuted in Pakistan on religious grounds is diminished by the fact that since he has lived in the United States he has made two trips to Pakistan, in 1974 and 1986. During his testimony he admitted that he was never harmed or threatened on account of his decision to stop practicing the Muslim faith. Moreover, during his testimony the respondent admitted that before he came to the United States he and his siblings received a western upbringing. His asylum application indicates that nobody in his family has ever been arrested or detained for their religious practices, including his sisters who presently reside in Pakistan.

Similarly, the court finds the respondent's claim that he will be harmed by the government for his political beliefs to be implausible. Political opinion includes an opinion believed to be held by an individual whether or not the individual in fact holds that opinion. See Lazo Majana v. INS, 813 F.2d 1432 (9th Cir. 1987). The respondent admitted to the court that he was never involved in any political

13

organizations while he lived in Pakistan. In its advisory opinion the state department finds "it most unlikely that the government of Pakistan would impute [an] anti-Pakistan political opinion to this application because Israel may have been involved in the matter for which he [respondent] was convicted in the U.S." [Exh. 5]. No evidence has been presented by the respondent to establish that the government would impute an anti-political opinion to the him because of his business ties to the Israeli government or because he provided the United States Congress with information about BCCI.

The court does, however, find it to be quite plausible that persons associated with BCCI would seek retribution against the respondent for providing government officials of the United States with damaging information about them. However, there is no nexus between the threat of harm and the respondent's political beliefs, religion, or any of the other enumerated grounds. Rather, the respondent's fear of harm emanates from his business associations. Hence, the harm which the respondent fears does not constitute persecution within the meaning of the Act. See Matter of Pierre, 15 I&N Dec. 461 (BIA 1975). Assuming arguendo that the respondent had demonstrated that his fear of persons connected to BCCI was due to his political opinion, he has still would have not have met his burden of proof since he has failed to present any evidence showing that these persecutors are members of the government or a group that the government is not able or willing to control. See Adebisi v. INS 952 F.2d 910 (5th Cir. 1992).

In sum, the respondent's application for asylum shall be denied as a matter of law and discretion. The respondent has not established either that he was persecuted in the past or that he has a well-founded

14

Doc 0005-1187

fear of persecution based upon any one of the five enumerated grounds, a requirement for asylum under §208 of the Act. Assuming that he had established such a fear, his application asylum would be denied on discretionary grounds due to his serious criminal record.

Since the respondent has failed to qualify for asylum, it automatically follows that his application for withholding of deportation should also be denied, as the standard for withholding of deportation is more stringent than that for asylum.

Accordingly, the following orders shall be entered.

I certify that copies of this document
have been personally handed to all
parties or have been mailed by me via
U.S. Postal Service.

Date: JAN 6 1995    By:

15

Doc 0005-1188

1184

ORDER:    IT IS HEREBY ORDERED THAT the respondent's applications for
asylum under §208 of the Act and withholding of deportation
under §243 of the Act are DENIED.

IT IS FURTHER ORDERED THAT the respondent is ordered deported to
his native country of Pakistan pursuant to the charge contained
in the Order to Show Cause.

_6 Jan 95_
DATE

R. Kevin McHugh
U.S. Immigration Judge

09471

16

Doc 0005-1189

1185

# EXHIBIT J

mle

| | | |
|---|---|---|
| 1 | A. | I was a permanent resident prior to my conviction. |
| 2 | Q. | So, when did you become a lawful permanent |
| 3 | | resident of the United States? |
| 4 | A. | I believe it was 1977, six or seven. |
| 5 | Q. | And, how did you acquire permanent residence? |
| 6 | A. | Because of my marriage to my wife. |
| 7 | Q. | And, what is her name? |
| 8 | A. | Sandra Durrani. |
| 9 | Q. | How long have you been divorced from her? |

10    JUDGE TO MR. FABACHER

11            Q.   Hold on for one minute, Mr. Fabacher.

12                        (OFF THE RECORD)

13                        (ON THE RECORD)

14    JUDGE TO MR. FABACHER

15            Q.   Okay.  Mr. Fabacher.

16            A.   Thank you, Judge.

17    MR. FABACHER TO MR. DURRANI

18            Q.   So, you were saying -- how did you acquire your

19    permanent residence?

20            A.   My marriage to my wife.

21            Q.   And, therefore, approximately how long have you

22    been a lawful permanent resident?

23            A.   Since 1977, I believe.

24            Q.   Did you ever apply for naturalization?

25            A.   Yes, I did.

A 21 763 558                    40              September 29, 1993

mle

1              Q.    And, what happened to that application?

2              A.    Everything was completed and the only thing left

3       was that I had to take that final oath in the stadium to complete

4       that.

5              Q.    And, why -- did you take that oath?

6              A.    No, I did not.

7              Q.    Why not?

8              A.    Because I was arrested at -- prior to that.   I

9       guess (indiscernible).

10      JUDGE TO MR. DURRANI

11             Q.    You're going to have to speak up, Mr. Durrani.

12             A.    I was arrested prior to actual ceremony in the

13      stadium.

14      MR. FABACHER TO MR. DURRANI

15             Q.    Now, what immediately family, if any, do you have

16      in Pakistan?

17             A.    Both my parents have been deceased so my brothers

18      live over here and I have sisters who have been married and they

19      live with their husbands there.

20             Q.    How many sisters?

21             A.    Three sisters.

22             Q.    And, is that the extent of your immediate family?

23             A.    That is correct.

24      JUDGE TO MR. FABACHER

25             Q.    He has three sisters but where do they live?

A 21 763 558                      41              September 29, 1993

# EXHIBIT K

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ARIF A. DURRANI**                                        )
                                                          )
                              **Plaintiff - *Pro Se*,**    )
           **v.**                                         )
                                                          )  Civil Action No. 1:08-cv-0607
                                                          )         (CKK)
**U.S. Citizen and Immigration Services**                 )
                                                          )
                              **Defendant.**               )
────────────────────────────────                         )

## DECLARATION OF T. DIANE CEJKA

I, T. DIANE CEJKA, hereby declare:

1. I am the Center Director for the National Records Center, National Security and Records Verification, United States Citizenship and Immigration Services (USCIS), within the Department of Homeland Security (DHS), in Lee's Summit, Missouri. I have held the position of Center Director since October 2003. I have had oversight of the National Records Center Freedom of Information Act Office since joining the USCIS (formerly Immigration and Naturalization Service) in 1999. Prior to my tenure with DHS, I served for 23 years with the Department of Defense in a variety of positions, including three years as the Defense Finance and Accounting Service – Kansas City Center Freedom of Information Act (FOIA) Officer.

2. As Center Director, I supervise approximately 100 information access professionals who are responsible for the orderly adjudication of all public, congressional, judicial and intra-/interagency requests or demands for access to USCIS records and information made pursuant to the FOIA, Privacy Act (PA), Executive Orders, departmental directives, regulations and compulsory legal process.

3. Through the exercise of my official duties, I am familiar with the procedures followed by the USCIS in responding to requests seeking the amendment of official agency records under the PA. More specifically, I am familiar with Plaintiff's current civil action brought under the PA, and all relevant events leading to the same. I make the following statements based upon my personal knowledge, upon information made available to me in my official capacity, and upon the advice and counsel of the USCIS Office of Chief Counsel.

1

4. This Declaration is submitted in support of Defendant's MOTION TO DISMISS, OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGEMENT filed with this Court in the above-captioned matter.

5. On September 28, 2007, the Department of Homeland Security, San Diego, California, forwarded to the United States Citizenship and Immigration Service, National Records Center (NRC), a copy of Plaintiff's December 7, 2006, request for:

   a. A copy of the petition that [the USCIS] filed on 7/26/86 with the [U.S. District] Court [for the Central District of California at Los Angeles].

   b. A copy of the petition that [the USCIS] assigned on 7/26/86 with the court.

   c. A copy of the document or petition that [the USCIS] 'granted' to file on 7/26/86 or any document that "grated" the petition to be filed.

   The USCIS interpreted Plaintiff's September 28th letter as a FOIA request for access to documents maintained in his alien file, and processed it accordingly.

6. By letter dated October 18, 2007, in accordance with its normal processing procedures, the USCIS acknowledged receipt of Plaintiff's FOIA request and assigned to this request control number NRC2007066997.

7. On January 11, 2008, the USCIS issued to Plaintiff a letter stating that a search of agency records failed to uncover documents responsive to his request.

8. On January 19, 2008, the Plaintiff filed a request with the NRC for a correction of the alien file maintained under, and retrievable by reference to, his name, date of birth and alien registration number.

9. On April 24, 2008, the USCIS provided to the Plaintiff a complete copy of his alien file, exclusive of all privileged or otherwise exempt documents and information contained therein. The file consisted of 1,751 pages. USCIS released 1,403 pages in full, withheld 138 pages in part, and 157 pages were withheld in full. The USCIS also referred 17 pages in part and one page in full to the government agencies where they originated for their direct replies to the requester. During the disclosure processing of the subject file, it was noted that the file did not contain a completed, duly executed Certificate of Naturalization naming Plaintiff as beneficiary.

10. On April 30, 2008, plaintiff filed another request with USCIS for a copy of his "citizenship certificate". On May 19, 2008, Plaintiff's request was determined to be a duplicate of one of his earlier requests to which the agency had responded; accordingly, Plaintiff's April 30 request was considered closed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Executed on _____, 2008.

T. Diane Cejka
Center Director
National Records Center

# EXHIBIT L

U.S. Department of Homeland Security
P.O. Box 648010
Lee's Summit, MO 64064-8010



U.S. Citizenship
and Immigration
Services

April 24, 2008                                          NRC2008001946

Arif A. Durrani
FCC Victorville I #09027-014
P.O. Box 5300
Adelanto, CA 92301-5300

Dear Arif A. Durrani:

This is in response to your Freedom of Information Act (FOIA) request received in this office January 10, 2008.

We have completed the review of all documents responsive to your request and have identified 1715 pages which are responsive to your request. Enclosed are 1403 pages released in their entirety, and 138 pages released in part. We are withholding 157 pages in full. In our review of these pages we have determined that they contain no reasonable segregable portion(s) of non-exempt information. We have referred 17 pages in full and one page in part to other government agencies for their direct response to you. We have reviewed and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(2), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) of the FOIA.

The following exemptions are applicable:

Exemption (b)(2) provides protection for records that are related solely to the internal personnel rules and practices of an agency. The types of documents and/or information that we have withheld under this exemption may relate to internal matters of a relatively trivial nature, such as internal personnel rules and practices which could consist of employee identification codes, computer login codes, policies regarding the use of parking facilities and break rooms, employee leave policies and dress codes or internal matters of a more substantial nature, the disclosure of which would risk circumvention of a legal requirement, such as operating rules, guidelines and manuals of procedures for examiners or adjudicators.

Exemption (b)(5) provides protection for inter-agency or intra-agency memorandums or letters, which would not be available by law to a party other than an agency in litigation with the agency. The types of documents and/or information that we have withheld under this exemption may consist of documents containing predecisional information, documents or other memoranda prepared in contemplation of litigation, or confidential communications between attorney and client.

Exemption (b)(6) permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, drivers license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.

NRC2008001946
Page 2

Exemption (b)(7)(C) provides protection for personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. We have withheld various information relating to third-party individuals. The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

Exemption (b)(7)(E) provides protection for records or information for law enforcement purposes which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonable be expected to risk circumvention of the law. The types of documents and/or information that we have withheld could consist of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques, and various other documents.

The enclosed record consists of the best reproducible copies available.

In the event you wish to appeal this determination, you may write to the USCIS FOIA/PA Appeals Office, 150 Space Center Loop, Suite 500, Lee's Summit, MO 64064-2139, within 60 days of the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Please be advised that the National Records Center does not process petitions, applications or any other type of benefit under the Immigration and Nationality Act. If you have questions or wish to submit documentation relating to a matter pending with the bureau, you must address these issues with your nearest District Office.

If you should have any additional questions about your request, please direct your inquiries to this office at the above address. You may also call us at 816-350-5570 or fax any correspondence to 816-350-5785.

Sincerely,

T. Diane Cejka
Director

Enclosure(s)

# EXHIBIT M

Arif A. Durrani
Reg. No. 09027-014
Federal Correctional Complex
Victorville I
P.O. Box 5300
Adelanto, CA 92301

April 30, 2008

Ms. T. Diane Cejka
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
P.O. Box 648010
Lee's Summit, Mo 64064-8010

Reference: FOIA Request for T File (T021763558) documents

Dear Ms. Cejka:

Please provide a copy of the following documents from the above referenced T file. It is located in Sect:CV-File Room Number 2 LL V, Resp: 9253- Row CV Shelf 9253-CV9253.

A copy of the documents and the citizenship certificate upon which the signed photograph in the extreme lower right hand corner of the attached document number 893 is affixed. Please also confirm the quantity of this photograph(s) that are within your file.

This is a narrow, specific search request and it is requested that it be processed on an expedited basis. A copy of the certificate of identity is also enclosed for this FOIA request. Your prompt processing of this request will be greatly appreciated.

Sincerely,

Arif A. Durrani

Encl: Document No. 893

AAD:ar



EXHIBIT N

U.S. Department of Homeland Security
P.O. Box 648010
Lee's Summit, MO 64064-8010



**U.S. Citizenship
and Immigration
Services**

May 19, 2008

NRC2008030654

Arif A. Durrani
Reg. No. 09027-014
FCC Victorville I
PO Box 5300
Adelanto, CA 92301

Dear Arif A. Durrani:

This is in response to your Freedom of Information Act (FOIA) request received in this office on May 19, 2008, regarding the subject: Arif A. Durrani.

Upon review of the FOIA/PA Tracking System, we discovered that your request had been duplicated within the system. This request has been closed out. The original request NRC2008001946, has been processed. The T file asked for in the request was consolidated into the A file prior to the processing of NRC2008001946. All documents that are releasable by law have been released to you under the previous control number. We apologize for any inconvenience this may have caused.

If you should have any additional questions about your request, please direct your inquiries to this office at the above address. You may also call us at 816-350-5570 or fax any correspondence to 816-350-5785.

Sincerely,

T. Diane Cejka
Director

# EXHIBIT O

Arif A. Durrani
Reg. No. 09027-014
Federal Correctional Complex
Victorville I
P.O. Box 5300
Adelanto, CA 92301

May 30, 2008

Ms. T. Diane Cejka
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
P.O. Box 648010
Lee's Summit, Mo 64064-8010

Reference: FOIA Request for documents

Dear Ms. Cejka:

  I have received your form reply dated May 19, 2008. I
still need your prompt response to my attached FOIA
request dated April 30, 2008. Please note that I do have
all the documents from my A file prior to your
consolidation with the T file. The quantity of the
documents from the A file are exactly with what you have
released after the consolidation of the T file. Therefore,
please check, and advise, specifically, answers to my FOIA
request dated April 30, 2008. I need from you the copy of
my certificate upon which the signed photo is affixed. I
also need the confirmation of the quantity of spare signed
photograph(s) as shown on right hand corner of document
893. If you cannot locate the certificate in the file,
please provide me the number of the certificate. It was
completed on July 23, 1986 with the N-405 form and
forwarded to the "GA" room.

  Your prompt processing of my FOIA request without any
further delay will be greatly appreciated.

Sincerely,

Arif A. Durrani

cc: Ms. Katherine R. Gallo
    Asst. Counsel to the Inspector General
    Office of the Inspector General

Encl: 3 pages, April 30, FOIA request and your May 19,
      2008, letter.


AAD:ar

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARIF A. DURRANI,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **U.S. CITIZENSHIP AND** | ) |
| **IMMIGRATION SERVICES,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**Civil Action No. 08-0607 (CKK)**

## ORDER

UPON CONSIDERATION of Defendant United States Citizenship and Immigration Services' Motion for Summary Judgment, memorandum, and accompanying documents, any opposition by Plaintiff, and the entire record herein, it is on this ___ day of _____, 2008.

ORDERED that Defendant's Motion for Summary Judgment is Granted.


Date _____                    _____
                                             UNITED STATES DISTRICT JUDGE